1
2
3
4
5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

6   RENARDO ROBERTSON, an individual,          Case No.:
    and RENARDO and DONNA
7   ROBERTSON, and their marital community,     **COMPLAINT FOR DAMAGES**
                                                **AND FURTHER RELIEF**
8              Plaintiffs,
9          v.
10  CATHOLIC COMMUNITY SERVICES OF              **JURY TRIAL DEMANDED**
    WESTERN WASHINGTON, a Washington
11  public benefit corporation.
12
               Defendant.
13

14          Plaintiff Renardo Robertson, and his marital community, by and through undersigned

15  counsel of record, for these claims against Defendant, alleges as follows:

16                          **I.     PARTIES**

17          1.      Plaintiff Renardo Robertson (hereinafter Plaintiff or Mr. Robertson) is a long-time

18  resident of Snohomish County, Washington, and has resided in Snohomish County, Washington,

19  at all relevant times herein.

20          2.      Plaintiff's race is African-American.

21          3.      Defendant Catholic Community Services of Western Washington (hereinafter

22  Defendant or CCS) is a Washington public benefit corporation with its principal place of

23  business in the City of Seattle, King County, Washington State. CCS is an arm of the Catholic

24  Church and falls under the leadership of the Archbishop of the Church. CCS was incorporated in

25  Washington in 1988, under the name Catholic Charities of Western Washington (CCWW). In

26  1990, CCWW changed its business structure from nonprofit corporation to public benefit

27  corporation. In 1991, CCWW changed its name to Catholic Community Services of Western

28  Washington (hereinafter CCS).

**COMPLAINT FOR DAMAGES AND JURY**                     **Teravainen Law Firm, PLLC**
**DEMAND -** Page 1 of 19                               6628 212th St. SW, Ste. 206
                                                        Lynnwood, WA 98036
                                                        (206) 629-8843
                                                        (425) 563-6701 (fax)

4.     CCS does business in and operates programs throughout Western Washington, including its operations and programs in Everett, Snohomish County, Washington, where it employed Plaintiff.

5.     CCS has and at all relevant times had fifteen or more employees.

6.     CCS is an "employer" within the meaning of the term "employer" under 42 U.S.C. § 2000e(b), of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII").

7.     At all relevant times herein, CCS was Plaintiff's employer within the meaning of the term "employer" under Title VII, 42 U.S.C. § 2000e(b).

8.     At all relevant times herein, Plaintiff was Defendant's employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

## II.     <u>JURISDICTION AND VENUE</u>

9.     Plaintiff alleges federal claims against Defendant under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*; and the Civil Rights Act of 1991, *as amended*, as well as 42 U.S.C. § 1981.

10.     Plaintiff alleges state claims against Defendant under the common law of the State of Washington.

11.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which grants district court jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

12.     This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as the federal claims.

13.     This action is commenced within the required time period under federal law, pursuant to 42 U.S.C. § 2000e-16(c).

14.     Plaintiff has exhausted his administrative remedies and has otherwise complied with all conditions precedent to the filing of this action.

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant is a resident of the Western District of Washington and the events giving rise to Plaintiff's claims took place in the Western District of Washington.

### III.     STATEMENT OF FACTS

16.     On or about January 28, 2013, Plaintiff began working for CCS as a Veterans Housing Case Manager or SSVF (Supportive Service for Veteran Families) Case Manager in Everett, WA. Plaintiff came into this position with twenty-three years of honorable service in the United States Navy. Plaintiff is a veteran and was previously stationed in Bremerton, Oak Harbor, Everett, and Marysville. He retired from the Navy in 2009 as a Chief Petty Officer, E-7.

17.     SSVF is a program administered by the United States Department of Veterans Affairs (VA). It provides grants and funding to organizations that provide outreach, case management, and housing services for military Veterans.

18.     As SSVF Case Manager, Plaintiff was a member of the Service Employees International Union (SEIU), Healthcare 1199NW.

19.     Plaintiff had a good work performance record throughout his time at CCS. In 2015, he earned Employee of the Year. In January 2018, CCS President Michael Reichert recognized him for helping CCS pass its financial audit.

20.     Upon information and belief, there were only approximately three (3) African or African-American employees, including Plaintiff, during the relevant period, out of a total of approximately 215 employees, in the CCS North workforce, which spans from Everett to Bellingham. There were also four (4) Hispanic employees and two (2) Asian employees in the CCS workforce, and everyone else was Caucasian.

21.     In late 2015, Sarah Jayne Barrett (Caucasian) became the Northwest Housing Director. In this position, she was Plaintiff's boss's boss.

22.     In March-April 2016, Plaintiff asked Barrett, along with SSVF Program Director Patti Spaulding and SSVF Housing Manager Mary Wahl, if he could apply for a Lead Case Manager position. Plaintiff was told that CCS did not have enough funding for a Lead position, but Plaintiff knew this was not true.

**COMPLAINT FOR DAMAGES AND JURY DEMAND -** Page 3 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

23.     In October 2016, Spaulding told Plaintiff there was an increase in the SSVF grant for the new fiscal year, in the form of cost of living adjustments (COLAs), which could be used to support a Lead position. Despite this, Plaintiff still did not get a meaningful response to his expressed interest in securing a Lead position.

24.     In October 2017, Plaintiff asked Wahl again about becoming a Lead Case Manager and did not get a meaningful response.

25.     Plaintiff later found out from Spaulding that Spaulding had offered the Everett office an increase in funding, which Wahl had declined.

26.     Upon information and belief, CCS received COLAs annually as part of its SSVF grants in order to pay SSVF employees more each year, but it did not pass those COLAs onto SSVF employees in Snohomish County.

27.     In October 2017, Barrett hired Caucasian Rhonda Polly to be Plaintiff's fellow SSVF Case Manager in Everett. Plaintiff and Polly would be the only two SSVF Case Managers in Snohomish County. Plaintiff was concerned about Barrett's decision to hire Polly into this position because Polly had no relevant experience and had never worked with veterans before.

28.     In December 2017, Plaintiff began working under a new supervisor, SSVF Program Supervisor Kelli Jo Hurley.

29.     Hurley treated Polly better than Plaintiff. She assigned Plaintiff significantly more work and harder work than Polly. Plaintiff consistently worked more hours and performed more difficult jobs than Polly. Plaintiff managed and serviced all of the African-American Veteran clients, conducted outreach, and regularly worked out in the field with the homeless, for example, while Polly sat at a desk in the office and did paperwork.

30.     Polly was also allowed to go through school and complete an internship, for which she missed work on a regular basis. She was also allowed to do her school work during work hours, while she was being paid hourly by CCS. She was also allowed to lie on her time sheets about how much work she was missing for school.

31.     CCS management expected Plaintiff to train and lead Polly, but they refused to promote or pay him more for being a Lead or a trainer. Plaintiff also had to do "damage control"

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

as a result of all the things Polly did not know how to do, which added even more to his workload. Because Plaintiff was the experienced and knowledgable Case Manager of the two, everyone would reach out to or approach Plaintiff with questions, problems, and tasks, rather than Polly, which also added significantly more to his workload in comparison to Polly's.

32.     Other Caucasian employees too, such as Josh Johnson, were also repeatedly allowed to violate CCS rules and policies without experiencing appropriate consequences.

33.     In February 2018, Plaintiff asked Barrett and Human Resources Manager Cindy Price about becoming a Lead Case Manager. Plaintiff was told he could not be a Lead because there were not enough SSVF Case Managers for him to lead. This occurred shortly after Caucasian Whitney Summers had been hired as a Veteran Navigator in the Everett office in 2017, a position for which she was not qualified.

34.     Barrett unilaterally created a rule that there had to be at least three SSVF Case Managers in any given individual office location in order for there to be a Lead SSVF Case Manager in that office. Barrett knew Plaintiff's Everett office location only had two SSVF Case Managers, although there were certainly numerous SSVF Case Managers throughout the Northern offices in need of a Lead. Upon information and belief, Barrett created this rule to prevent Plaintiff from becoming a Lead. Never before had this "three or more" rule been in existence or been mentioned or discussed, prior to Barrett using it as a justification for denying Plaintiff the opportunity to become a Lead.

### ***Plaintiff Engaged in Protected Opposition and Experienced Retaliation***

35.     Sometime in May 2018, Plaintiff complained to Hurley about the disparate treatment he was experiencing in his position. Shortly before that, in April 2018, Plaintiff has also complained to Spaulding about race discrimination. Upon information and belief, neither Hurley nor Spaulding conducted any investigation or took any remedial action in response to Plaintiff's concerns.

36.     On June 19, 2018, Plaintiff reported his concerns about disparate treatment and race discrimination to Vice-President of Human Resources Kim Williams and Reichert. Plaintiff also met with Hurley and Assistant Housing Director Rita Jo Case that day and expressed his

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

concerns about discrimination and disparate treatment. In response, Hurley told Plaintiff to worry about his job and let them worry about the policies.

37.     That same day, on June 19, 2018, Plaintiff filed a union grievance alleging discrimination, poor equal opportunity, and unfair employment practices. Plaintiff submitted his grievance to Hurley, Price, Williams, and Vice-President/Regional Chief of Operations/Agency Director Will Rice. None of them made any meaningful efforts to address Plaintiff's concerns.

38.     On August 2, 2018, Plaintiff, *pro se*, contacted the Washington State Human Rights Commission (WSHRC) to file a Charge of Discrimination against CCS alleging race discrimination and retaliation. The following day, on August 3, 2018, WSHRC completed and filed the Charge.

39.     On August 17, 2018, Plaintiff contacted emailed Rice, Reichert, and Williams and reminded them that it had been nearly sixty (60) days since he had filed his grievance, and still no meaningful action had been taken in response. Plaintiff also informed them that he had contacted WSHRC to file a Charge of Discrimination against CCS.

40.     Four days later, on August 21, 2018, Williams finally met with Plaintiff for his Step 2 union grievance meeting. During this meeting, Plaintiff complained to Williams about a "Black Lives Matter" poster, which Barrett had displayed prominently on the second floor of the office. The display offended Plaintiff in particular because of the hypocrisy of Barrett professing an outward persona of promoting the importance of black lives, while at the same time discriminating against Plaintiff because of his race. Plaintiff asked to have the sign removed.

41.     On September 11, 2018, Plaintiff told Williams he had contacted two outside agencies regarding his concerns. Williams had told Plaintiff she would investigate his concerns, but Plaintiff still had not received a meaningful response.

42.     On September 13, 2018, Plaintiff was informed that his office space was being moved into a small hallway at the back of the building, right outside the bathroom. In that space, Plaintiff would be alone and ostracized from the rest of the workforce and from his Caucasian coworkers. Polly would be moving into a large office room with another case worker who was

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 6 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

outside of the SSVF program. Previously, Plaintiff and Polly had been sharing a larger office room with two desks.

43.     That same day, on September 13, 2018, Plaintiff asked Hurley why his office was being moved, and she responded, "the leadership has asked us to move." She gave no other explanation.

44.     Plaintiff also realized that day that someone at work had stolen his plant from his office. The plant was a sentimental plant that had been given to him by a former CCS supervisor, who had later died.

45.     The following day, on September 14, 2018, Plaintiff and Polly traveled for several hours round trip to CCS's Tacoma office to attend a workplace investigation and diversity training. This event was being held at the Tacoma office in response to race discrimination complaints African-American employees had made at that office. During this event, Plaintiff voiced his concerns about race discrimination in the Everett office as well.

46.     On September 17, 2018, Plaintiff asked Price, in the presence of union delegate John McAlpine, why his office had been moved. Price had no meaningful response and seemed to be avoiding the question. That same day, the office change was carried out as planned.

47.     Also that same day, on September 17, 2018, Plaintiff complained to Williams, Reichert, and Rice about unlawful retaliation and told them he intended to file a union grievance regarding his office being moved. Plaintiff filed a grievance later that day, alleging unlawful retaliation for reporting race discrimination.

48.     Immediately thereafter, Plaintiff had to take several days off of work per his doctor's orders, due to extreme stress caused by the discrimination and retaliation he was facing at work. This was when Plaintiff began his therapy sessions for work stress, and he has been undergoing this treatment ever since.

49.     Plaintiff notified WSHRC about the office move, in response to which WSHRC stated that his existing Charge of Discrimination would be amended.

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

50.     While Plaintiff was out of work, on September 18, 2018, Williams delivered the results of her workplace investigation into Plaintiff's concerns to Plaintiff's union representative. Her Step 2 grievance response of course concluded that there was no wrongdoing by CCS.

51.     Plaintiff's grievance proceeded through Step 3 in October 2018, with Plaintiff and his union representative continuing to complain about unlawful retaliation on September 26, 2018, October 3, 2018, and October 4, 2018. The Step 3 meeting was held on October 18, 2018.

52.     On October 31, 2018, Rice issued his Step 3 grievance response, which of course found no racial bias or discrimination by CCS. In this response, Rice falsely accused Plaintiff of subjecting Polly to a hostile work environment. This accusation was never explained to him in any detail, and, upon information and belief, was never investigated. Plaintiff was never interviewed about it, and, upon information and belief, no one else was interviewed about it either. Polly never complained or objected to Plaintiff about any mistreatment from or by Plaintiff.

53.     Plaintiff's grievance proceeded through Step 4 in November 2018. After management did not respond to attempts to schedule a mediation, Plaintiff decided to return to WSHRC to pursue his Charge of Discrimination there.

54.     On or about December 5, 2018, Plaintiff contacted WSHRC to find out why his Charge of Discrimination had not yet been amended. WSHRC prepared an amended complaint that day, which Plaintiff signed, and which was filed as an amendment to his August 3, 2018 Charge of Discrimination.

55.     On December 19, 2018, Plaintiff's August 3, 2018 Charge of Discrimination was dually filed with the U.S. Equal Employment Opportunity Commission (EEOC) as EEOC Charge No. 38G-2019-00100 (FEPA No. 31ERZ-0379-18-9).

56.     Upon information and belief, EEOC notified CCS via U.S. Mail about Plaintiff's August 3, 2018 Charge of Discrimination on or about December 19, 2018, but WSHRC did not.

57.     On January 2, 2019, Plaintiff sent a copy of his August 3, 2018 WSHRC Charge of Discrimination to Reichert, Williams, Rice, Price, and his union representative. Price finally contacted him that same day to schedule a mediation.

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

58.     Upon information and belief, WSHRC mailed a Notice of Discrimination regarding Plaintiff's August 3, 2018 Charge of Discrimination to CCS on or about January 2, 2019, but WSHRC mailed it to the wrong address. The Notice was returned to WSHRC and then re-mailed on or about January 17, 2019, to the correct mailing address.

59.     Price later canceled the Step 4 mediation and then did not respond to Plaintiff's attempts to reschedule it. After four months of not being able to schedule the Step 4 mediation, Plaintiff eventually withdrew his grievance, on March 18, 2019.

60.     Meanwhile, on or about March 8, 2019, Polly had resigned from her employment at CCS. That same day, Hurley posted the opening for SSVF Case Manager (Polly's position).

61.     On April 3, 2019, an applicant interviewed for the posted SSVF Case Manager position and passed the background and references checks. Later that month, the applicant was told that the position was on hold.

62.     Toward the end of April 2019, Hurley began yelling at Plaintiff and humiliating him in front of his coworkers about insignificant things. This occurred on numerous occasions, including April 23-24, 2019, May 15, 2019, and May 22-23, 2019.

63.     On May 8, 2019, Hurley told Plaintiff that the open position was on hold because there was not enough work to do in Snohomish County to justify having two SSVF Case Managers, even though the program at that time was understaffed. At that time, Hurley began talking about a possible reduction in force (RIF) that could eliminate Plaintiff's position in Snohomish County.

64.     On May 17, 2019, Plaintiff and Hurley talked again about a possible RIF.

65.     On May 20, 2019, Plaintiff completed an intake questionnaire for WSHRC, in which he alleged race discrimination, retaliation, discrimination based on his veteran status, and failure to accommodate his disability (hypertension), which was being aggravated or exacerbated by the stress of the race discrimination and retaliation. *Inter alia*, Plaintiff stated: "I believe the CCS NW Leadership is retaliating against me by eliminating my position for participating in a protected activity from a previous WSHRC complaint that has not been investigated since I received my charge letter in December 2018."

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 9 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

66.     On May 21, 2019, Plaintiff wrote to Hurley, Spaulding, Reichert, Rice, Williams, Tacoma Housing Services Director Alan Brown, and CCS SW Director Denny Hunthausen, asking questions and expressing concerns about his apparent and imminent layoff.

67.     On or about May 22, 2019, Plaintiff submitted and filed his Charge of Discrimination with WSHRC.

68.     On May 23, 2019, Plaintiff complained to Price and Williams about Hurley subjecting him to a hostile work environment by yelling at him in front of his coworkers.

69.     On or about May 30, 2019, Plaintiff and his union representative Amy Yount met with Rice. Rice told them the hiring for SSVF Case Manager was on hold because the entire SSVF program was on hold in Snohomish County. Rice added that the grant for Snohomish County had never been submitted. Upon information and belief, there were no changes to the SSVF program in any other county.

70.     On June 3, 2019, Plaintiff filed another union grievance alleging hostile work environment and retaliation with respect to Hurley's treatment of him in particular. He asked in the grievance to be removed from Hurley's supervision of him.

71.     That same day, on June 3, 2019, Plaintiff had to take several more days off of work due to the extreme stress caused by the discrimination and retaliation against him at work. Plaintiff's stress became so overwhelming that he slipped into a downward spiral with depression, anxiety, and alcohol abuse and had to undergo treatment for several weeks, per doctor's note.

72.     On June 17, 2019, Plaintiff complained to Reichert about discrimination, an abusive working environment, and retaliation. He also asked Reichert about his employment status and the future of the program and his position and also reported his concerns about Hurley having misappropriated SSVF funds.

73.     The very next day, on June 18, 2019, Rice emailed Snohomish County officials and announced that CCS would not be renewing the contract for the SSVF Program in Snohomish County, which meant Plaintiff would be out of a job. This was despite the fact that

**COMPLAINT FOR DAMAGES AND JURY DEMAND -** Page 10 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

CCS had already completed and submitted its renewal paperwork for this contract on or before February 22, 2019.

74. On June 25, 2019, Plaintiff, *pro se*, went to EEOC and completed an intake questionnaire, at which time EEOC informed him that a Charge of Discrimination had already been filed by WSHRC on June 18, 2019. Upon information and belief, this June 18, 2019 Charge of Discrimination was the same one Plaintiff had submitted to WSHRC on or about May 22, 2019.

75. EEOC then filed a Charge of Discrimination on his behalf, alleging race discrimination, hostile work environment, and retaliation. The Charge was labeled with the EEOC Charge No. 38G-2019-00100 (FEPA No. 31ERZ-0379-18-9), which is the same Charge number as the August 3, 2018 Charge. Upon information and belief, CCS was notified of this new submission on the same day or within a few days thereafter.

76. On July 1, 2019, on the day Plaintiff returned to work from his medical leave, Plaintiff received notice from Rice that his job was being eliminated effective September 30, 2019. Plaintiff then received the official layoff letter dated July 3, 2019 from Price detailing the terms of his layoff.

77. CCS did not provide Plaintiff with a reason for the layoff, other than stating that CCS would no longer receive SSVF funding for his position after the end of the fiscal year.

78. Snohomish County was the only county affected by the layoff or reduction in force. All other counties participating in the SSVF Program through CCS were still slated to continue their contracts and funding.

79. Plaintiff was the only employee impacted by this program change and RIF.

80. That same month, Plaintiff's therapist ordered him to start working half days, no more than four hours a day, due to extreme job stress.

81. Plaintiff expressed his interest in securing a different position with CCS, but CCS did not give Plaintiff an opportunity to secure other SSVF or veterans service positions, for which Plaintiff is uniquely knowledgeable, well suited, and well qualified. Management kept

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 11 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

promising they were working on a "transition plan" but never made any efforts to place Plaintiff into a position for which he was well suited.

82.     On or about July 8, 2019, Plaintiff notified both the EEOC and WSHRC investigators about the layoff notice.

83.     EEOC immediately issued a Right to Sue after that, which Plaintiff received on or about July 15, 2019. The Right to Sue Notice was labeled with the EEOC Charge No. 551-2019-02762.

84.     That same day, on July 15, 2019, WSHRC contacted CCS to perform an on-site meeting regarding Plaintiff's allegations of discrimination. Upon information and belief, that meeting was scheduled, canceled, and then never held.

85.     On July 16, 2019, a grievance meeting was held with Case and McAlpine. Case issued a Step 1 grievance response on July 29, 2019. In response, on July 30, 2019, Plaintiff again withdrew his union grievance and told Case and Price he intended to take his concerns up with the EEOC instead.

86.     In early August 2019, Plaintiff found out that CCS had in fact received funding for the SSVF program in Snohomish County on August 5, 2019, for the following fiscal year (2019-2020). Despite this fact, CCS never reversed its decision about ending the SSVF program in Snohomish County.

87.     On August 23, 2019, Plaintiff emailed Case, copying Spaulding, Rice, Williams, and Barrett, and asked if his layoff would be rescinded in the event the VA was unable to find another organization to operate the SSVF program in Snohomish County, in order to prevent uninterrupted service to Veterans. Rice responded, "the answer is no."

88.     Pulling the SSVF program from Snohomish County means that not only will Plaintiff, who has a wife and three children, be out of a job, but also that hundreds of veterans and their families will be displaced and without housing assistance.

89.     After finding out that CCS did in fact secure a grant for the SSVF program in Snohomish County but still had no intention of operating that program in Snohomish County, Plaintiff reaffirmed and reiterated to CCS his resolve to continue serving Veterans in Snohomish

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 12 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

County. Management already knew about Plaintiff's particular passion for and unwavering commitment to serving Veterans and about his desire to continue doing this same type of work. Plaintiff is uniquely knowledgeable about Veterans and the military and is uniquely qualified to serve Veterans; this is the type of work he does and has always done. Plaintiff remains determined to continue working in this capacity.

90. On or about September 19, 2019, CCS tried to trick Plaintiff into saying he was voluntarily resigning from his job at CCS, which he did not do and which was not the case.

91. On or about September 30, 2019, Plaintiff received a written Notice of Right to Sue from WSHRC for Charge Nos. 31ERZ-0379-18-9 and 17EVZ-0774-18-9.

### *Other African-American and Minority Employees Faced Similar Discrimination at CCS*

92. During his employment at CCS, since at least 2015 when Barrett began working there, Plaintiff observed a pattern and practice of CCS attempting to get rid of its minority employees.

93. Several other minority employees also complained to CCS about race discrimination at CCS.

94. In October to December of 2017, Tewana Martin, an African-American Case Manager in CCS's Tacoma office, complained about race discrimination after being denied the opportunity to secure a Lead position. Ms. Martin alleged that CCS told her it did not have the funding for Lead positions—and then selected a Caucasian employee for a Lead position. She also complained about disparate treatment with regard to work hours.

95. Ms. Martin and Plaintiff later learned that the Caucasian selectee for the lead position had given Spaulding a time share in Hawaii in or before December 2017.

96. On or about April 9, 2018, Ms. Martin complained to Williams at CCS about race discrimination. Then, on or about May 23, 2018, she filed a Charge of Discrimination with WSHRC. Ms. Martin listed Plaintiff in her WSHRC Intake Questionnaire as a witness to the race discrimination at CCS and as one of several African-American employees who were also discriminated against because of race.

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 13 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

97.     On or about October 10, 2018, Ms. Martin resolved her discrimination claims against CCS in a formal settlement agreement with the help of WSHRC. Pursuant to its WSHRC settlement agreement, CCS agreed not to retaliate against anyone who participated in WSHRC's proceeding.

98.     Shortly after Ms. Martin's dispute was resolved, CCS implemented a freeze on Lead positions across the board.

99.     Jennifer Bush, another African-American Case Manager in Tacoma, had asked about completing an internship, but CCS denied her request. This was in contrast to Polly, who was allowed to complete an internship during work hours. Ms. Bush also complained to Spaulding about race discrimination at CCS.

100.     Latonya Rock, another African-American former employee of CCS, also endured some sort of trauma as a result of race discrimination she endured at CCS. Ms. Rock left CCS in the Fall of 2018 and had emotional difficulties maintaining subsequent employment, due to the extreme stress caused by her experience at CCS.

101.     In February 2017, African-American employee Appollonia Gaines was discriminated against by Barrett and Caucasian supervisor Troy Wall. Ms. Gaines and Wall were coworkers until Wall was promoted over her and became her supervisor. Ms. Gaines complained about being intimidated and belittled by Barrett and Wall and, shortly thereafter, she was compelled to resign.

102.     In 2016, James Lockhart, another former African-American employee of CCS, filed a union grievance against CCS alleging race discrimination. Mr. Lockhart was subsequently retaliated against and terminated from his employment. Meanwhile, a Caucasian employee received an oral warning for the same type of allegation for which Mr. Lockhart was terminated.

103.     In 2015, Hispanic employee Joe DeLuna was terminated after having difficulty being overloaded with work under Barrett's management. African-American CCS employee Delmar Algee may also have been discriminated against at CCS because of his race.

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

IV.   **LEGAL CLAIMS**

**FIRST CLAIM**

**RACE DISCRIMINATION (DISPARATE TREATMENT) IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §§ 1981A, 2000e-2**

104.    Plaintiffs incorporate by reference paragraphs 1 through 103 above.

105.    Plaintiff belongs to a protected class on the basis of his race (African-American).

106.    Defendant treated Plaintiff less favorably than similarly situated non-African-American employees in the terms or conditions of his employment and otherwise discriminated against Plaintiff as set forth above.

107.    Defendant subjected Plaintiff to discriminatory treatment at CCS because of his race.

108.    Defendant subjected Plaintiff to adverse employment action(s) because of his race.

109.    Defendant terminated Plaintiff's employment from CCS because of his race.

110.    As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**SECOND CLAIM**

**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

111.    Plaintiffs incorporate by reference paragraphs 1 through 103 above.

112.    Plaintiff belongs to a protected class on the basis of his race (African-American).

113.    Defendant treated Plaintiff less favorably than similarly situated non-African-American employees in the terms or conditions of his employment and otherwise discriminated against Plaintiff as set forth above.

114.    Defendant subjected Plaintiff to discriminatory treatment at CCS because of his race.

115.    Defendant subjected Plaintiff to adverse employment action(s) because of his race.

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

116.     Defendant terminated Plaintiff's employment from CCS because of his race.

117.     Defendant's discrimination against Plaintiff with respect to the breach of the parties' employment relationship on the basis of Plaintiff's race is in violation of 42 U.S.C. § 1981 ("Section 1981").

118.     The effect of these violations has been to deprive Plaintiff of rights and privileges which are enjoyed by non-African-American persons and protected by Section 1981.

119.     As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**THIRD CLAIM**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**42 U.S.C. §§ 2000e-3, 1981a**

120.     Plaintiffs incorporate by reference paragraphs 1 through 103 above.

121.     During his employment with CCS, Plaintiff engaged in protected opposition to what he believed in good faith to be unlawful discrimination against him by reporting the discrimination against him and/or others to his superior(s) at CCS.

122.     Defendant took adverse employment action(s) against Plaintiff.

123.     Defendant took adverse employment actions against Plaintiff because he engaged in protected opposition to what he believed in good faith to be unlawful discrimination against him.

124.     As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**FOURTH CLAIM**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**

125.     Plaintiffs incorporate by reference paragraphs 1 through 103 above.

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

126.    During his employment with CCS, Plaintiff engaged in protected opposition to what he believed in good faith to be unlawful discrimination against him by reporting the discrimination against him and/or others to his superior(s) at CCS.

127.    Defendant took adverse employment action(s) against Plaintiff.

128.    Defendant took adverse employment actions against Plaintiff because he engaged in protected opposition to what he believed in good faith to be unlawful discrimination against him.

129.    Defendant's discrimination against Plaintiff with respect to the breach of the parties' employment relationship on the basis of Plaintiff's race is in violation of Section 1981.

130.    The effect of these violations has been to deprive Plaintiff of rights and privileges which are enjoyed by non-African-American persons and protected by Section 1981.

131.    As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**FIFTH CLAIM**
**TORT CLAIM FOR WRONGFUL DISCHARGE**
**IN VIOLATION OF PUBLIC POLICY**

132.    Plaintiffs incorporate by reference paragraphs 1 through 103 above.

133.    Washington law, including but not limited to RCW 49.60 and 49.12.200, recognizes a clear public policy against discrimination in all its forms, on the basis of race.

134.    Plaintiff engaged in conduct directly related to the clear public policies against unlawful discrimination in Washington State, the discouragement of which would jeopardize that public policy.

135.    Defendant thereafter terminated Plaintiff's employment.

136.    Defendant terminated Plaintiff's employment because he engaged in protected opposition to what he believed in good faith to be discrimination and/or harassment against him made unlawful by Washington state law and pursuant, to which clear public policies are in place.

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

137.     Defendant's conduct, acts, and/or omissions constitute(s) the tort of wrongful discharge in violation of public policy.

138.     As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**SIXTH CLAIM**
**TORT CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

139.     Plaintiffs incorporate by reference paragraphs 1 through 103 above.

140.     Defendant's conduct, acts, and/or omissions constitute(s) the tort of negligent infliction of emotional distress.

141.     As a result and proximate cause of Defendant's conduct, Plaintiffs have suffered injury and/or damages, for which they are entitled to recover actual, compensatory, economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial.

**V.     PRAYER FOR RELIEF**

142.     <u>Punitive Damages</u>: Defendant's conduct described above is outrageous and demonstrates a reckless disregard for human life and a conscious disregard for public safety. Defendant's acts and omissions described above were willful and wanton, performed with actual or implied malice, and/or with reckless indifference to Plaintiff's federally-protected rights. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendant for:

A.     Lost wages and benefits stemming from any and all adverse employment action(s) taken against him, in an amount to be established at trial;

B.     Damages for any and all forms of emotional distress they have experienced, including but not limited to humiliation, loss of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, sadness, anger, anxiety, and anguish, in amounts to be established at trial;

COMPLAINT FOR DAMAGES AND JURY
DEMAND - Page 18 of 19

Teravainen Law Firm, PLLC
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)

1       C.       Any and all other actual damages, costs, and expenses;

2       D.       Punitive damages to the extent authorized by law;

3       E.       Injunctive and equitable relief as the Court deems appropriate;

4       F.       Attorney's fees and costs to the extent authorized by law;

5       G.       Pre- and post- judgment interest to the extent authorized by law;

6       H.       Monetary relief for any adverse tax consequences of their awards; and

7       I.       Costs and attorneys' fees of this lawsuit, with interest; and

8       J.       All and all such other and further relief as the Court deems just and

9   proper.

10   Dated this 9th day of October, 2019.

11

12                           TERAVAINEN LAW FIRM, PLLC

13

14

15                           Natalie Teravainen, Esq.

16                           Attorney for Plaintiffs
                        Teravainen Law Firm, PLLC

17                           6628 212th St. SW, Ste. 206
                        Lynnwood, WA 98036

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND JURY**
**DEMAND -** Page 19 of 19

**Teravainen Law Firm, PLLC**
6628 212th St. SW, Ste. 206
Lynnwood, WA 98036
(206) 629-8843
(425) 563-6701 (fax)