UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENARDO ROBERTSON, et al., | CASE NO. C19-1618 RSM |
| Plaintiffs, | ORDER |
| v. | |
| CATHOLIC COMMUNITY SERVICES OF WESTERN WASHINGTON, | |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on the parties' dueling discovery motions. The discovery dispute focuses on the discoverability of Plaintiff's medical and mental health records. Defendant seeks both medical and mental health records dating back to 2010. Plaintiff argues that the request is overly broad, that the medical and mental health records he has produced thus far have fully satisfied his discovery obligations, and that allowing Defendant to subpoena Plaintiff's treatment providers would violate his privacy rights and be an undue burden on his treatment providers. Accordingly, Plaintiff seeks to quash subpoenas that Defendant has sent to Plaintiff's providers. Finding that Plaintiff has placed his medical and mental health at issue, the Court resolves the issues as follows.

ORDER – 1

## II. BACKGROUND

Plaintiff began working for Defendant on January 28, 2013. Dkt. #1 at ¶ 16.[1] Most of the employment relationship passed amicably. In March-April 2016, however, Defendant did not appoint Plaintiff to a position he desired. *Id.* at ¶ 22. Thereafter, Plaintiff began feeling that he was being discriminated against and, after he aired his concerns in spring of 2018, retaliated against. *See generally id.* at ¶¶ 16–91. Thereafter, the relationship deteriorated until Plaintiff was laid off in the summer of 2019. *Id.* Plaintiff has brought claims for employment discrimination and retaliation, wrongful termination, and negligent infliction of emotional distress. *Id.* at ¶¶ 104–141.

Plaintiff's allegations of emotional distress are particularly relevant to the motions at hand. Specifically, Plaintiff alleges that towards the end of 2018 he experienced "extreme stress" because of the discrimination and retaliation and was instructed by his doctor to "take several days off of work." *Id.* at ¶ 48. At the same time, "Plaintiff began his therapy sessions for work stress, and he has been undergoing [] treatment ever since." *Id.* Plaintiff alleges that he had to again "take several more days off of work due to the extreme stress caused by the discrimination and retaliation against him." *Id.* at ¶ 71. The stress "became so overwhelming that he slipped into a downward spiral with depression, anxiety, and alcohol abuse and had to undergo treatment for several weeks, per doctor's note." *Id.* The stress continued and in July 2019, "Plaintiff's therapist ordered him to start working half days, no more than four hours a day, due to extreme job stress." *Id.* at ¶ 80.

Plaintiff alleges that "[a]s a result and proximate cause of Defendant's conduct, Plaintiff[] [has] suffered injury and/or damages, for which [he is] entitled to recover actual, compensatory,

---

[1] Throughout, the Court cites to the docket and page numbers applied by the Court's CM/ECF system. Where appropriate, the Court cites to numbered paragraphs or page and line numbers.

ORDER – 2

economic, non-economic, special, general, and/or punitive damages, in an amount to be proven at trial." *Id.* at ¶ 141. Plaintiff further prays for a judgment against Defendant "for any and all forms of emotional distress [he has] experienced, including but not limited to humiliation, loss of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, sadness, anger, anxiety, and anguish, in amounts to be established at trial." *Id.* at p.18, ¶ B. Plaintiff also seeks "[a]ny and all other actual damages, costs, and expenses." *Id.* at p.19, ¶ C.

Defendant served discovery requests on Plaintiff, two of which are relevant here:

INTERROGATORY NO. 6: Describe any medical doctor, psychologist, psychiatrist, counselor or any other health care practitioner that has treated you during the course of the last 10 years, including substance abuse (e.g. alcohol abuse) treatment programs. This Interrogatory requires you to identify the name and current business address, phone number, the specialty area of expertise of the practitioner, and the dates of treatment.

. . . .

REQUEST FOR PRODUCTION NO. 12: Please produce all records originating from or concerning any treatment you received from any medical doctor, psychologist, psychiatrist, therapist, counselor or any other health care practitioner during the past ten (10) years, including but not limited to those identified in your response to Interrogatory No. 6. **To respond to this request, please complete all appropriate sections of, and sign and produce, the attached Authorization for Release of Medical Records for any health care provider responsive to this request.**

Dkt. #20 at 47, 56 (emphasis in original).

Through the course of discovery—an apparently contentious process which the parties present in unnecessarily meticulous detail—Plaintiff produced 166 pages of records.[2] While conceding that medical and mental health records are discoverable, Plaintiff redacted portions of the documents produced. *Id.* at ¶ 4. Plaintiff indicates he has produced documents

> which relate to any and all mental health conditions, substance abuse, emotional distress, and/or any health conditions which Plaintiff alleges have been caused,

---

[2] The Court does not understand Plaintiff's response to Interrogatory No. 6 to be a point of contention beyond demonstrating the parties' positions.

ORDER – 3

aggravated, exacerbated, worsened, contributed to, triggered, or otherwise affected by Defendant or Defendant's actions, for the time period March 1, 2014 to present . . . .

*Id.* at 70.

Unsatisfied with Plaintiff's discovery responses, Defendant began the process of subpoenaing the records directly from Plaintiff's treatment providers and filed its Motion to Compel (Dkt. #19). Defendant's Motion sought to compel "Plaintiff to produce his medical and mental health records from January 1, 2010 onward." Dkt. #19 at 7. Defendant additionally sought "a judge signed order for the production of Plaintiff's medical records held by the Veterans' Administration" after learning that some providers, affiliated with the Navy, would not release records on an attorney-signed subpoena alone. *Id.*

Defendant's actions prompted Plaintiff to file his Motion to Quash. Dkt. #21. Therein, Plaintiff asked that the Court quash Defendant's subpoenas and issue a protective order limiting discoverable records to "the time period from March 1, 2014, to present," and then, "to records relating to: (1) his mental health, including substance abuse; (2) emotional distress; and (3) any health condition Plaintiff is alleging was caused, aggravated, exacerbated, worsened, triggered, or otherwise affected by Defendant or Defendant's actions." *Id.* at 2.[3]

### III. DISCUSSION

**A. Discovery Generally and Requests for Production**

Federal Rule of Civil Procedure 26 sets the broad scope of permissible discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

[3] Plaintiff also asked that the Court stay the subpoenas pending resolution of the motions. However, the subpoenas required compliance before the noting date of the motions and the parties indicate that Plaintiff's treatment providers did not comply with the subpoenas.

ORDER – 4

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). After the 2015 amendments to Rule 26, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." FED. R. CIV. P. 26, Advis. Comm. Notes for 2015 Amends. Even where evidence is relevant and proportional, the Court may limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i).

A party may issue requests for production, limited by the general scope of discovery, to other parties seeking access to documents in "the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). The responding party must produce the responsive documents or "state with specificity the grounds for objecting to the request, including the reasons" and "state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. FED. R. CIV. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B. Psychotherapist-Patient Privilege**

The parties appear to agree that this dispute turns on Plaintiff's waiver of the psychotherapist-patient privilege.[4] Where, as here, a case involves both state and federal claims,

---

[4] The Court draws no distinction between Plaintiff's mental health records and Plaintiff's medical records in this case. Waiver of the psychotherapist-patient privilege is more limited and more importantly, Plaintiff makes clear that both types of records have been put at issue. *See* Dkt. #1 at ¶¶ 48, 71, 80 (detailing *doctor's* instructions to take several days off of work, continuing

ORDER – 5

the federal law of privilege applies to both the state and federal claims. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003); *see also Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978) (concluding that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation," at least where information sought goes to both federal and state claims). Here, the records at issue are relevant to both Plaintiff's state and federal claims and the Court applies federal law of privilege.

Confidential communications made to a licensed psychiatrist or psychologist during the course of treatment are afforded privilege protection under Federal Rule of Evidence 501. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The privilege may be waived when a plaintiff seeks certain emotional distress damages. *See Santelli v. Electro–Motive*, 188 F.R.D. 306, 308 (N.D. Ill. 1999). This is because "[f]or each item of damages, whether economic or non-economic, the plaintiff must show that the damage was proximately caused by the defendant's unlawful conduct." *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568 (S.D. Cal. 1999). If there is evidence to show that a plaintiff's emotional distress may have been caused by something besides the injury, fairness dictates that the defendant should be permitted access to that evidence. *See id.*

The Ninth Circuit has not definitively determined the circumstances that constitute a waiver of the psychotherapist-patient privilege and district courts have adopted different approaches. *Carrig v. Kellogg USA Inc.*, Case No. C12-837RSM, 2013 WL 392715, at *2 (W.D. Wash. Jan. 30, 2013) (collecting cases and describing alternative approaches). This Court generally applies the "middle ground" approach, finding waiver when the plaintiff asserts more than "garden-variety" emotional distress. *See id.* at *3; *see also Ginter v. BNSF Ry. Co.*, Case

---

*therapy sessions* for work stress, *doctor's* requirement for several weeks of alcohol abuse treatment, and *therapist's* order to only work half days).

ORDER – 6

No. C13-224RSM, 2014 WL 294499, at *3 (W.D. Wash. Jan. 24, 2014); *Karrani v. JetBlue Airways Corp.*, Case No. C18-1510RSM, 2019 WL 2269818, at *2 (W.D. Wash. May 28, 2019).

Courts adopting the middle ground approach define "garden-variety" emotional distress as "ordinary or commonplace," that which is "simple or usual." *Fitzgerald*, 216 F.R.D. at 637 (citing *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000)). Claims of emotional damages for humiliation, embarrassment, and anger do not waive the privilege. *See Santelli*, 188 F.R.D. 306. However, waiver follows where a plaintiff alleges more complex distress, including "any specific psychiatric injury or disorder, or unusually severe distress." *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000) (considering FED. R. CIV. P. 35(a)'s approach to independent medical examinations when a party's physical or mental condition is "in controversy"). Emotional distress damages for conditions such as anxiety and depression are not recognized as "garden-variety" emotional distress claims. *Ginter*, 2014 WL 294499, at *3.

Here, there is little question that Plaintiff's claims extend beyond "garden-variety" claims for emotional distress. Plaintiff details that the stress caused by the alleged discrimination and retaliation was extreme, causing him to pursue professional treatment, take days off from work, spiral into "depression, anxiety, and alcohol abuse" such that he had "to undergo treatment for several weeks," and ultimately to work "no more than four hours a day." Dkt. #1 at ¶¶ 48, 71, 80. Further, Plaintiff asserts broad claims for damages encompassing "actual, compensatory, economic, non-economic, special, general, and/or punitive damages," *id.* at ¶ 141, and "[a]ny and all other actual damages, costs, and expenses." *Id.* at p.19, ¶ C. Plaintiff does not advance "garden-variety" emotional distress claims.

Likewise, Defendant details that Plaintiff's claims themselves act as a waiver of the psychotherapist-patient privilege. Dkt. #19 at 6 (noting that a Washington claim for negligent

ORDER – 7

infliction of emotional distress requires a plaintiff to establish emotional distress susceptible to medical diagnosis and proved through medical evidence) (quoting *Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 506, 325 P.3d 193, 205 (2014)); Dkt. #19 at 6 (arguing that medical and mental health records are put at issue with by federal race and retaliation claims). Plaintiff does little to rebut Defendant's arguments and certainly does not meet his burden to establish that waiver does not apply here. The Court agrees that Plaintiff has waived the psychotherapist-patient privilege.

**C. Motion to Quash**

Plaintiff's request that the Court quash Defendant's subpoenas to his treatment providers is easily disposed of.[5] No matter the subject matter, attorneys issuing subpoenas have a duty to "avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). A subpoena that subjects a person to undue burden should be quashed or modified. FED. R. CIV. P. 45(d)(3). All circumstances where a party has standing to quash a subpoena issued to a third party are not clear, but courts generally recognize an assertion of privilege as providing standing to ask that a subpoena be quashed. *See e.g.*, *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (noting that the general rule is that a party has standing only to protect its own privilege and that the Ninth Circuit has not addressed the question).

Having already determined that Plaintiff has waived his psychotherapist-patient privilege, the Court finds Plaintiff's other arguments unavailing. Plaintiff complains that the subpoenas "impose an undue burden and expense on nonparties." Dkt. #21 at 7. But these arguments are speculative and for the subpoenaed parties to assert. Plaintiff also argues that the subpoenas

---

[5] The parties further acknowledge that Plaintiff's request may be moot as the dates by which the subpoenas required compliance passed prior to the date on which the motions were noted for the Court's consideration.

ORDER – 8

should be quashed because Defendant did not provide Plaintiff appropriate notice. *Id.* at 9. But while Plaintiff asserts baldly that he was provided "insufficient time to prepare an objection," the Court notes that Plaintiff received almost a month of notice, filed a motion to quash, and does not point to any more specific prejudice. Plaintiff had a full opportunity to address the issue.

**D. Motion for Protective Order**

In contrast to a motion to quash, a party clearly has standing to seek a protective order to limit discovery from a third party. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005). Third-party subpoenas issued pursuant to Federal Rule of Civil Procedure 45 are still subject to the limitations of Rule 26. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *In Re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). Accordingly, the Court may "issue an order to protect [any] party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotypical and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co.*, 231 F.R.D. at 429–30 (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (requiring demonstration of harm or prejudice that will result from discovery).

Plaintiff seeks two main limitations on Defendant's access to his medical and mental health records. Dkt. #21 at 2. First Plaintiff seeks to redact medical conditions that he deems irrelevant or off-limits.[6] Plaintiff argues he has consciously limited "the knowing and voluntary

---

[6] Plaintiff also indicates that he redacted his home address, date of birth, and social security number from the medical records he produced. Dkt. #24 at 5. Plaintiff did not provide any contemporaneous privilege log, does not now identify a legal basis for the redactions, and does

ORDER – 9

waiver of his mental health records privilege under federal law [to prevent] the involuntary disclosure of highly sensitive, humiliating, embarrassing, and confidential health information." Dkt. #24 at 5. Citing to an out of district magistrate decision in a pro se case, Plaintiff claims a right to "redact non-responsive portions of his confidential mental health and medical records, which relate to health conditions he is not putting at issue in this case." *Id.* at 4 (citing *Tiedemann v. Southern Health Partners Inc.*, Civ. Act. No. 4:15-cv-5075-RMG-TER, 2017 WL 445591 (D. S.C. Feb. 2, 2017)). Other than mentioning medical records that were partially redacted, the Court does not see *Tiedemann*'s relevance. There, the plaintiff requested medical records related to himself "from August 19, 2013, through December 25, 2013," and later sought to compel production of portions which had been redacted because they were outside of plaintiff's narrow timeframe. Having already concluded that Plaintiff has waived privilege for his medical and mental health records, the Court cannot agree with Plaintiff's position.

Secondly, Plaintiff seeks to limit the time-period for which Defendant can seek records. Plaintiff argues that he "has agreed all along to produce his relevant medical and mental health records for a six-year period (03/01/2014 to present)." Dkt. #21 at 2. Plaintiff maintains that this is the appropriate date because it is two years prior to the first alleged unlawful conduct and is in accordance with a Washington State statute. *Id.* at 12 (citing WASH. REV. CODE § 49.60.510(2)). On this record, the Court accepts this as a reasonable restriction on the scope of discovery.

Defendant argues the date should be earlier because Plaintiff alleged that he "observed discrimination" by Defendant as early as 2015. Dkt. #22 at 4. But this date refers to Plaintiff's observation of discrimination against third parties and does not provides a basis for inquiry into

---

not explain why that information is not sufficiently protected by the protective order entered in this case and the Court's local rules. *See* Dkt. #18; LCR 5.2.

ORDER – 10

Plaintiff's contemporaneous medical and mental health records. Defendant further argues that Plaintiff may have received treatment for unspecified mental health issues as early as 2010 or 2012. *Id.* But Defendant provides the Court no proof and Plaintiff represents that he did not "need [] mental health diagnosis or treatment, and [had] no documented mental health issues for at least four and a half years" proceeding his 2018 treatment for matters related to this case. Dkt. #26 at 4. On this record—with no evidence that Plaintiff received any mental health treatment between 2014 and 2018 or that the 2018 treatment was in any way related to his earlier mental health condition or treatment—the Court finds good cause to restrict the relevant period to March 1, 2014 to present.

**E. Request for Order Pursuant to 5 U.S.C. § 552a(b)(11)**

After sending subpoenas to Plaintiff's treatment providers, some of whom are affiliated with the United States Navy, Defendant received a communication from a Staff Judge Advocate in the Judge Advocate General's Corps of the United States Navy. Dkt. #20 at ¶ 12. That communication indicated that the release of Navy records would require a "judge-signed subpoena or judge-signed court order to obtain the requested records." *Id.* at 112–15 (Navy counsel citing 5 U.S.C. § 552a(b)(11)). Plaintiff argues that the Court should not order the Navy to produce the records because the records may be available from Plaintiff. Dkt. #24 at 10–11. The Court does not find the argument satisfactory at this point. Plaintiff has never averred that he has all his existing medical and mental health records, has never averred whether all medical and mental health records in his possession, custody, or control have been produced or whether some were withheld in whole, and has baselessly redacted some of documents that he did produce. Defendant may obtain the records directly from Plaintiff's treatment providers and the Navy. To the extent necessary for the purposes of 5 U.S.C. § 552a(b)(11), the Court orders the

Plaintiff's contemporaneous medical and mental health records. Defendant further argues that Plaintiff may have received treatment for unspecified mental health issues as early as 2010 or 2012. *Id.* But Defendant provides the Court no proof and Plaintiff represents that he did not "need [] mental health diagnosis or treatment, and [had] no documented mental health issues for at least four and a half years" proceeding his 2018 treatment for matters related to this case. Dkt. #26 at 4. On this record—with no evidence that Plaintiff received any mental health treatment between 2014 and 2018 or that the 2018 treatment was in any way related to his earlier mental health condition or treatment—the Court finds good cause to restrict the relevant period to March 1, 2014 to present.

**E. Request for Order Pursuant to 5 U.S.C. § 552a(b)(11)**

After sending subpoenas to Plaintiff's treatment providers, some of whom are affiliated with the United States Navy, Defendant received a communication from a Staff Judge Advocate in the Judge Advocate General's Corps of the United States Navy. Dkt. #20 at ¶ 12. That communication indicated that the release of Navy records would require a "judge-signed subpoena or judge-signed court order to obtain the requested records." *Id.* at 112–15 (Navy counsel citing 5 U.S.C. § 552a(b)(11)). Plaintiff argues that the Court should not order the Navy to produce the records because the records may be available from Plaintiff. Dkt. #24 at 10–11. The Court does not find the argument satisfactory at this point. Plaintiff has never averred that he has all his existing medical and mental health records, has never averred whether all medical and mental health records in his possession, custody, or control have been produced or whether some were withheld in whole, and has baselessly redacted some of documents that he did produce. Defendant may obtain the records directly from Plaintiff's treatment providers and the Navy. To the extent necessary for the purposes of 5 U.S.C. § 552a(b)(11), the Court orders the

Navy to produce Plaintiff's medical and mental health records for the period of March 1, 2014 to present.

### IV. CONCLUSION

Having considered the motions, the relevant briefing, the declarations and records submitted in support thereof, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendant's Motion to Compel Production of Plaintiff Renardo Robertson's Mental Health and Medical Records; And for an Order to Produce Records From United States Government (Dkt. #19) is GRANTED IN PART and DENIED IN PART as specified in this Order. Plaintiff SHALL PRODUCE, within fourteen (14) days, medical and mental health records in his possession for the period March 1, 2014 to present. Alternatively, or in addition to, Defendant may subpoena records from Plaintiff's treatment providers for the period of March 1, 2014 to present.[7]

2. Plaintiff's Motion to Quash Subpoenas for Medical Records to Plaintiff's Treatment Providers, Motion to Stay, and Motion for Protective Order (Dkt. #21) is GRANTED IN PART and DENIED IN PART as specified in this Order.

//
//
//
//
//

---

[7] The Court does note, as does Defendant, that "the collegial practice of [signing stipulations for records releases] is fairly routine in this district." Dkt. #25 at 5 (quoting, with alterations, *Prue v. Univ. of Washington*, Case No. C07-1859RSL, 2008 WL 3891466, at *2 (W.D. Wash. Aug. 19, 2008).

ORDER – 12

//

//

3. To the extent necessary for the purposes of 5 U.S.C. § 552a(b)(11), the Court ORDERS the Secretary of the Navy and his designee to produce to Defendant Catholic Community Services of Western Washington, within thirty (30) days of receipt of this Order any and all mental health and medical records belonging or relating to Plaintiff Renardo Robertson for the period March 1, 2014 to the present date.

DATED this 10th day of April, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 13